NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Sullivan
No. 2021-0151

LORETTANN GASCARD

v.

ANDREW J. HALL & a.

Argued: February 23, 2022
Opinion Issued: October 20, 2022

Nikolas Gascard, non-attorney representative appearing by approval of the Supreme Court under Rule 33(2), on the brief and orally, for the plaintiff.

Desmarais Law Group, PLLC, of Manchester (Debra L. Mayotte on the brief and orally), for defendant Andrew J. Hall.

Orr & Reno, P.A., of Concord (William L. Chapman and Elizabeth C. Velez on the brief, and William L. Chapman orally), for defendant Newspapers of New Hampshire, Inc., d/b/a Concord Monitor.

HANTZ MARCONI, J. The plaintiff, Lorettann Gascard, appeals a decision of the Superior Court (Tucker, J.) dismissing her complaint against the defendants, Andrew J. Hall and Newspapers of New Hampshire, Inc., d/b/a

Concord Monitor (Concord Monitor). The plaintiff asserts that the trial court erred in determining that a statement attributed to Hall and published in the Concord Monitor did not constitute defamation. We affirm.

I

The following facts are taken from the plaintiff's complaint and exhibits.[1] The plaintiff and her son, Nikolas Gascard, owned a collection of works purportedly painted by the artist Leon Golub that they inherited from two family members. Between 2009 and 2011, Hall purchased twenty-four paintings from the Gascards' collection. In 2014, in preparing to exhibit the paintings at Hall's museum in Vermont, the director of Hall's art foundation contacted the Spero-Golub Foundation (Foundation) to confirm information about the collection. After inspecting the paintings, a member of the Foundation informed the director that the twenty-four paintings were "likely forgeries."

In September 2016, Hall filed a civil action in the United States District Court for the District of New Hampshire against the Gascards, alleging that they had sold him forged art. On November 29, 2018, after a five-day jury trial, Hall prevailed in his civil case and was awarded $465,000. On December 4, the Concord Monitor published an online article by columnist Ray Duckler titled "Art of deception: Collector awarded $500k after buying fraudulent paintings." A similar column appeared in the print edition of the Concord Monitor the following day.

In October 2019, the Gascards sued Hall and the Concord Monitor for defamation based on Hall's statement to Duckler, as reported in the articles, that Hall "'had said he believed Lorettann, an artist herself, had painted the forgeries.'" They alleged that the article was "false and defamatory per se" because, "[b]y failing to disclose the full factual basis underlying Hall's belief that Lorettann painted the twenty-four paintings[,] the . . . article conveyed Hall's belief as a statement of fact."

The defendants moved to dismiss. Following a hearing, the trial court granted their motions. As to the claim against Hall, the trial court noted that "the complaint did not include the entire statement, which Duckler reported as '[Hall] had said that he believed Lorettann, an artist herself, had painted the forgeries, but he never knew for sure.'" The trial court determined that, because the statement must be considered as a whole, "the qualification omitted from the complaint, but evidenced by the exhibits attached to it, [was] integral to addressing the claim." The court reasoned that Hall's qualification, that "he 'never knew for sure'" whether Lorettann had painted the forgeries,

---

[1] Although the complaint was filed by Lorettann and Nikolas Gascard, Nikolas is not a party to this appeal.

"dispel[led] an implication of undisclosed defamatory facts." The trial court concluded that the statement "reflect[ed] [Hall's] opinion rather than a statement of fact" and, thus, was not actionable. For the same reasons, the court dismissed the identical claims against the Concord Monitor. This appeal followed.

## II

In reviewing a trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 673 (2017). We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to her. Id. However, we need not assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. Id. In conducting this inquiry, we may also consider documents attached to the plaintiff's pleadings, documents the authenticity of which are not disputed by the parties, official public records, or documents sufficiently referred to in the complaint. Automated Transactions v. Am. Bankers Ass'n, 172 N.H. 528, 532 (2019).

We decide this appeal under New Hampshire law, rather than the First Amendment. See Boyle v. Dwyer, 172 N.H. 548, 553 n.3 (2019). In doing so, we are cognizant of the limitations placed on the application of state defamation law by the United States Supreme Court, through its interpretation of the First Amendment. Id.; see Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990).

To survive the motion to dismiss, the plaintiff must have alleged facts that would show that the defendants failed to exercise reasonable care in publishing a false and defamatory statement of fact about her to a third party. Automated Transactions, 172 N.H. at 532. Embedded in this recitation is the requirement that the challenged statement be one of fact. Id. Conversely, a statement of opinion is not actionable unless it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion. Id. Whether a given statement can be read as being or implying an actionable statement of fact is a question of law to be determined by the trial court in the first instance, considering the context of the publication as a whole. Boyle, 172 N.H. at 553. For purposes of resolving this appeal, we, like the trial court, assume that Hall made the statement as it appears in the articles.

The plaintiff first argues that the trial court's conclusion that Hall's statement did not imply undisclosed defamatory facts was erroneous because it "directly contravenes" the Supreme Court's decision in Milkovich, "which

3

plainly held that simply couching such statements in terms of opinion does not dispel these implications." (Quotation omitted.) She asserts that the qualification in the statement that Hall "believed" but "never knew for sure," "merely speaks to his own subjective evaluation of the facts upon which his opinion is based, and does not imply in the least that he is not in possession of such facts." (Bolding omitted.) We disagree.

In Milkovich, a case involving a media defendant, the Supreme Court clarified that there is no "wholesale defamation exemption for anything that might be labeled 'opinion,'" noting that "expressions of 'opinion' may often imply an assertion of objective fact." Milkovich, 497 U.S. at 18 (explaining that in the statement, "'In my opinion John Jones is a liar,' [the speaker] implies a knowledge of facts which lead to the conclusion that Jones told an untruth"). Because the "breathing space which freedoms of expression require in order to survive is adequately secured by existing constitutional doctrine," the Court declined to create "an artificial dichotomy between 'opinion' and fact." Id. at 19. The Court held that only statements that present or imply the existence of facts that can be proven true or false are actionable under state defamation law. Id. at 18-20.

Thus, as we have explained, "an opinion is . . . actionable for defamation when the opinion may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." Boyle, 172 N.H. at 553 (quotation omitted). We reject the plaintiff's apparent argument that, simply because Hall's statement included a qualification that "he believed" and "never knew for sure," the trial court was precluded as a matter of law from determining, on a motion to dismiss, that the statement did not contain factual implications and thus was not actionable. Here, Hall's statement cannot reasonably be understood to imply the existence of defamatory fact as the basis of his opinion. The fact that the plaintiff is "an artist herself" is neither defamatory nor false. As the article reports, the plaintiff herself told Hall she was in Golub's art class in the 1960s. See id. (explaining that whether a statement can be read as implying an actionable statement of fact must be considered in the context of the publication as a whole).

Rather, it is clear to a reasonable reader that Hall did not actually know whether the plaintiff painted the forged art because, as he plainly stated, "he never knew for sure." See Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002) (explaining that "even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts" (quotation omitted)). We agree with the trial court that Hall's qualification that "he never knew for sure" negated any implication that he was in possession of facts that confirm the truth of the speculation that Lorettann had painted the forgeries.

4

We likewise are not persuaded by the plaintiff's argument that evaluating the statement in the context of the Concord Monitor articles as a whole "further strengthens the implication that [Hall] was in possession of facts which underlie his opinion." (Bolding omitted.) The articles report Hall's explanation for why he did not initially doubt the Gascards' account describing how they acquired the paintings; Hall's admission that he failed to undertake sufficient due diligence prior to purchasing the paintings; how Hall learned the paintings were forgeries; and that, at trial on the allegations that the Gascards sold him forged paintings, an expert on Golub's work testified that the paintings did not match the artist's style. The expert concluded only that the paintings were forgeries, not who had painted them. We see nothing in the articles that supports the plaintiff's position that they imply "that Hall was in possession of undisclosed facts which lead him to the conclusion that Lorettann Gascard painted the works." Indeed, Hall expressly acknowledged that he did not know for sure who painted the forgeries.

Accordingly, we conclude that the trial court did not err in determining that, as a matter of law, "[v]iewed in its totality, the statement, couched as conjecture, does not imply it is grounded on undisclosed defamatory facts," and affirm the court's dismissal of the plaintiff's defamation claims against the defendants.

Affirmed.

DONOVAN, J., concurred; HOURAN, J., retired superior court justice, specially assigned under RSA 490:3, concurred.

5